# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) Case Nos.<br>ZACHARY L.K. WILLIAMS, )<br>)<br>)<br>Defendant. )<br>) | 06-20047-04-CM (Criminal)<br>12-2059-CM (Civil) |

## MEMORANDUM AND ORDER

Presently before the court is a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody (Doc. 547) filed pro se by defendant Zachary L.K. Williams. Also before the court is a motion for retroactive application of sentencing guidelines to crack cocaine offenses under 18 U.S.C. § 3582 (Doc. 557). On December 16, 2008, a jury convicted defendant on Counts 1, 9, and 11 of the Third Superseding Indictment. These convictions included conspiracy to manufacture, to possess with intent to distribute and to distribute fifty grams or more of cocaine base, "crack," within 1,000 feet of a public elementary school, and distribution of cocaine base, "crack." On September 16, 2009, this court sentenced defendant to a total term of imprisonment of 210 months. Defendant timely appealed. The Tenth Circuit affirmed defendant's conviction on October 29, 2010, and issued a mandate on November 23, 2010. Defendant did not file a writ of certiorari.

## 28 U.S.C. § 2255 Motion (Doc. 547)

I. **General § 2255 Standards**

A defendant is entitled to relief under 28 U.S.C. § 2255 "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise

-1-

open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . ." 28 U.S.C. § 2255. "The standard of review of Section 2255 petitions is quite stringent," and "[t]he court presumes that the proceedings . . . were correct." *United States v. Illescas*, No. 04-20120-JWL, 05-3411-JWL, 2006 WL 1517760, at *1 (D. Kan. May 26, 2006) (quoting *United States v. Nelson*, 177 F. Supp. 2d 1181, 1187 (D. Kan. 2001) (citations omitted)). "To prevail, [the] defendant must show a defect in the proceedings which resulted in a complete miscarriage of justice." *Id.* (internal quotation omitted).

## II. Ineffective Assistance of Counsel

Defendant's six stated grounds for habeas relief are ineffective assistance of counsel claims.[1] Defendant claims his trial counsel was ineffective in the following ways:

1. Failing to object and move for a mistrial and/or new trial on the basis of personal bias by the undersigned judge;

2. Failing to challenge the jury composition of the grand and petit jury;

3. Failing to move to dismiss the indictment because the government knowingly presented false testimony to the grand jury;

4. Failing to object to the PSR's erroneous guideline application and the court's adoption of the PSR guideline;

5. Failing to object and move for a mistrial and/or new trial on the basis that the district court erred when it tendered limited instructions to the jury regarding the admission of government's 404(b) testimony into evidence; and

6. Failing to move to dismiss defendant's indictment because the government knowingly presented false testimony to the petit jury.

### A. Legal Standard

In analyzing a habeas petitioner's claim for ineffective assistance of counsel, the court applies the general standard set out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Romano v. Gibson*, 278 F.3d 1145, 1151 (10th Cir. 2002) (applying *Strickland*). Under *Strickland*,

---

[1] The government failed to respond to the fifth and sixth grounds for relief stated by defendant.

-2-

a petitioner must meet a two-prong test. First, he must demonstrate that his attorney's performance was deficient and "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. The court gives considerable deference to an attorney's strategic decisions and strongly presumes that the attorney has provided adequate assistance and made all significant decisions using reasonable professional judgment. *Id*. at 690. Second, a habeas petitioner must show that he was prejudiced by trial counsel's deficient performance, which requires that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Further, in deciding an ineffective assistance of counsel claim, the court is not required to address both prongs of the test if one prong is not met. *Id*. at 697.

### B. Defendant's Claims

#### 1. Failure to Object and Move for Mistrial and/or New Trial on Basis of the Undersigned Judge's Personal Bias

Defendant's first claim is that his counsel was ineffective in failing to object to or investigate the undersigned judge's presumed bias based on his alleged familiarity with government witness, Valerie Abarca, and her family. Defendant argues that the undersigned judge presided over his pretrial and trial proceedings without disclosing to the parties the judge's personal relationship with Abarca and her family.

Under 28 U.S.C. § 144, a party may seek voluntary recusal of a judge by filing a timely and sufficient affidavit stating that the judge has a personal bias or prejudice either against the party or in favor of any adverse party. 28 U.S.C. § 144. The affidavit must state the facts and basis for the claim of bias or prejudice. *Id*. Filing an affidavit does not automatically disqualify the judge. *United States v. Bray*, 546 F.2d 851, 857 (10th Cir. 1976) (citation omitted). Bias and prejudice must be based on some "extrajudicial source and result in an opinion on the merits on some basis other than what the judge has learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563,

583 (1966). Recusal is required under 28 U.S.C. § 455 when "a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." *United States v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987) (citations omitted). Recusal is not required based on "unsupported, irrational, or highly tenuous speculation." *Id*.

Here, defendant fails to state any facts to show that the undersigned judge acted with any bias toward him or in favor of the government. Defendant's motion states that Abarca told petitioner and his codefendants that the undersigned judge is a "very good friend and advocate of her family" and that defendant relayed this information to his attorney. (Doc. 547 at 4.) The undersigned judge does not have any prior familiarity with Abarca. However, even assuming the truth of these allegations, defendant points to no ruling or finding of the court that was improper or purportedly based on bias. Thus, recusal under 28 U.S.C. § 144 would not have been required. Further, recusal under 28 U.S.C. § 455 was not required because a reasonable person would not question the undersigned judge's impartiality solely based on a judge's alleged familiarity with a witness in a case. Therefore, defendant has failed to show that his attorney's failure to object and move for a mistrial and/or a new trial was deficient or fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687–88. Defendant's ineffective assistance of counsel claim on this issue is denied.

### 2. Failure to Challenge the Grand and Petit Jury Composition

Defendant's next claim is that his attorney was ineffective for failing to challenge the composition of the grand and petit juries. Specifically, defendant claims that "the jury venire failed to represent a fair cross-section of [defendant]'s black community." (Doc. 547 at 5.) The Sixth Amendment provides a right to a jury pool comprised of a fair cross-section of the community. *United States v. Robertson*, 45 F.3d 1423, 1439 (10th Cir. 1995). Under the Jury Selection and Service Act of

1968 ("the Act"), 28 U.S.C. § 1861, *et seq.*, district courts are required to develop written plans for random selection of jurors. Local Rule 38.1 contains the plan for the District of Kansas.

A defendant must satisfy three requirements to establish a prima facie violation of the Sixth Amendment fair cross-section requirement:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury-selection process.

*Washington v. United States*, No. 94-2451-GTV, 1996 WL 570198, at *4 (D. Kan. Sept. 27, 1996) (citing *United States v. Ruiz-Castro*, 92 F.3d 1519, 1527 (10th Cir. 1996), *overruled on other grounds, United States v. Flowers*, 464 F.3d 1127 (10th Cir. 2006)) (other citations omitted).

In *Washington*, the court discussed the Tenth Circuit's recognition in *Ruiz-Castro* that federal courts have generally approved of the use of voter registration lists. *Id.* at *5. To challenge use of voter lists, a defendant must show that use of the lists results in the systematic exclusion of "a distinct, cognizable class of persons from jury service." *Id.* (citations omitted). The court in *Washington* then detailed the procedures used in this district under Local Rule 38.1, and found that the procedures provide for random selection of petit and grand jurors as required by 28 U.S.C. § 1863(b)(2) of the Act. *Id.* Section 1863(b)(2) authorizes the selection of names of prospective jurors from voter registration lists. 28 U.S.C. § 1863(b)(2). In addition, this district's method of selection of prospective jurors is expressly approved by the language of the Act. *United States v. Pottorf*, 828 F. Supp. 1489, 1494 (D. Kan. 1993).

Defendant's motion puts forth no evidence that the district's jury selection method has resulted in a systematic exclusion of "[defendant]'s black community." (Doc. 547 at 5.) Defendant fails to show that, but for his attorney's failure to challenge the composition of the grand and petit juries, there

would be a reasonable probability that the results would be different or that his attorney's failure to challenge the composition fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 694, 687–88. Defendant's ineffective assistance of counsel claim on this issue is denied.

### 3. Failure to Move to Dismiss the Indictment Because the Government Knowingly Presented False Testimony to the Grand Jury

For his third claim, defendant argues that his attorney was ineffective for failing to move to dismiss his indictment based on the fact that the government knowingly presented false testimony to the grand jury. "The prosecution's knowing solicitation of, or failure to correct, perjured testimony violates the defendant's due process rights and will be grounds for a new trial if the false testimony could in any reasonable likelihood have affected the judgment of the jury." *United States v. Henderson*, 179 F. App'x 535, 539 (10th Cir. 2006) (internal quotation omitted).

Defendant's motion pointed to the testimony of two witnesses: Detective Mike McAtee and Lolester Mitchell. Defendant makes a conclusory statement that Detective McAtee admitted on cross-examination that his grand jury testimony was inconsistent and that he "did it to gain more evidence." (Doc. 547 at 7.) Defendant also claims that Lolester Mitchell admitted he did not know defendant.

The court addressed these same arguments in its order granting defendant's motion for extension of time and denying defendant's motion for grand jury transcripts (Doc. 566). There, the court stated the following:

> Moreover, the court has reviewed the trial testimony of both Detective McAtee and Mitchell and finds that defendant's claims regarding these two witnesses are unsupported by the record. During cross-examination by defendant's attorney (Mr. Edmonds), Detective McAtee did admit that some information in the affidavit he completed to obtain a search warrant was not consistent with the trial testimony of Lester Campbell, a confidential informant. (Doc. 494 at 99–110.) Contrary to defendant's claims, however, Detective McAtee did not admit that his grand jury testimony was inconsistent. The attorney for codefendant McIntyre (Mr. Toth) did attempt to illustrate an inconsistency in Detective McAtee's grand jury testimony; nonetheless, the content of this testimony had nothing to do with defendant. (Doc. 494 at 90–93.)

> In addition, a review of Mitchell's trial testimony does not reveal a statement by him that he did not know defendant. Instead, Mitchell stated that he saw defendant at a concert and that Mitchell was in the same pod with defendant at some point during Mitchell's incarceration. (Doc. 493 at 6, 17.)

(Doc. 566 at 3–4.)

Thus, defendant has failed to show that either witness gave false testimony, or further, that the government knowingly presented false testimony. Defendant has failed to show that his attorney's failure to move to dismiss defendant's indictment was deficient or fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687–88. Defendant's ineffective assistance of counsel claim on this issue is denied.

### 4. Failure to Object to the PSR's Erroneous Guideline Calculation

Defendant's fourth claim is that his attorney was ineffective for failing to object to the presentence report's ("PSR") erroneous guideline applications, including the drug quantity calculation and the two-level firearm enhancement. First, defendant does not specify how the guideline applications are erroneous. Defendant merely argues that he had nothing to do with the conspiracy. Second, upon review of the record, the court finds that defendant's claim that his counsel failed to object to these issues is unfounded. Defendant's PSR indicates that defendant's attorney made both of these objections, and the court addressed both of these objections at sentencing. (Doc. 517 at 21–25.) Defendant has failed to show that his attorney was deficient—in fact, his attorney did precisely what defendant states he should have done. Defendant's ineffective assistance of counsel claim on this issue is denied.

### 5. Failure to Object and Move for Mistrial and/or New Trial After District Court Tendered Limited Instructions to Jury Regarding Admission of Government's 404(b) Evidence

Defendant's fifth claim is that his attorney was ineffective for failing to object and move for a mistral and/or a new trial after the court failed to instruct the jury regarding the specific purpose of Officer Curtis Clay's testimony. At trial, Officer Clay, a police officer of the Clewiston, Florida, Police Department, testified that he stopped defendant during a traffic stop and arrested him for possession of drugs. He also testified that defendant made a statement after being given Miranda warnings that he did not sell drugs and was merely a transport person. Defendant argues that this statement was false.

Defendant claim focuses on the language of the court's Jury Instruction No. 3:

At times during the trial the court passes upon objections to the admission of certain things into evidence. Questions relating to the admissibility of evidence are solely questions of law for the court and you must not concern yourselves with the reasons for its rulings. In your consideration of the case, you must draw no inferences from these rulings and you must consider only the evidence which is admitted by the court.

(Doc. 397 at 4.)

Defendant argues that the court should have instructed the jury regarding the specific purpose of Officer Clay's testimony. "In reviewing challenges to jury instructions, the Court must look at the jury instructions as a whole and determine if the jury likely was misled." *United States v. Powell*, 165 F. Supp. 2d 1230, 1238 (D. Kan. 2001) (citing *United States v. Smith*, 13 F.3d 1421, 1424 (10th Cir. 1994) (citation omitted)). Defendant does not state how the instruction above, or the court's failure to instruct the jury regarding the specific purpose of Officer Clay's testimony, misled the jury. Moreover, defendant has not shown that he was prejudiced by his attorney's failure to object. *See Strickland*, 466 U.S. at 694 (requiring that

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

### 6. Failure to Move to Dismiss the Indictment Because the Government Knowingly Presented False Testimony to the Petit Jury

Defendant's final claim is that his attorney was ineffective for failing to move to dismiss the indictment because the government knowingly presented false testimony to the petit jury. As is stated above, "[t]he prosecution's knowing solicitation of, or failure to correct, perjured testimony violates the defendant's due process rights and will be grounds for a new trial if the false testimony could in any reasonable likelihood have affected the judgment of the jury." *Henderson*, 179 F. App'x at 539 (internal quotation omitted). This claim also focuses on the testimony of Officer Clay. Defendant claims that Officer Clay falsely testified that defendant told him he was "just a transport person" and that "he just took 'em [sic] from somebody [sic] to a friend." (Doc. 547 at 14.) Defendant maintains that he did not say this to Officer Clay.

Part of defendant's argument is that his attorney failed to conduct an investigation into Officer Clay's testimony. This claim is unsupported by the record. Defendant's attorney did in fact question Officer Clay on cross-examination about his conversation with defendant. (Doc. 492 at 121–22.) Again, defendant has failed to show that Officer Clay gave false testimony, or further, that the government knowingly presented false testimony. Defendant has failed to show that his attorney's failure to move to dismiss defendant's indictment was deficient or fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687–88. Defendant's ineffective assistance of counsel claim on this issue is denied.

## 18 U.S.C. § 3582(c)(2) Motion for Retroactive Application of the Sentencing Guidelines to Crack Cocaine Offense (Doc. 557)

Defendant's motion asks for retroactive application of the sentencing guidelines under 18 U.S.C. § 3582(c)(2). Defendant's one-page motion does not specify whether he seeks the reduction under the Fair Sentencing Act of 2010 ("FSA") or under some other provision. The government's response treats defendant's motion as one asking for relief under the FSA, and correctly notes that the FSA does not apply retroactively to offenders who were already sentenced prior to its enactment and thus defendant is not entitled to relief under the FSA. *See United States v. Reed*, 410 F. App'x 107, 111 (10th Cir. 2010) (internal quotation omitted).

Defendant's reply, however, makes it clear that his motion to reduce his sentence was based on Amendments 706 and 750 to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), and not the non-retroactive FSA. The court construes defendant's motion liberally and, accepting his clarification, considers his motion as one based on Amendments 706 and 750.

Under 18 U.S.C. § 3582(c)(2), "a district court may reduce a defendant's sentence where the defendant was sentenced based on the applicable sentencing guidelines, and those guidelines are subsequently lowered by the Sentencing Commission." *United States v. Jones*, No. 08-20067-CM, 2012 WL 1536199, at *1 (D. Kan. May 1, 2012). Any reduction must be "consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

The FSA "amended various United States Code provisions with respect to crack cocaine violations, raising the quantities of cocaine base required to trigger various statutory mandatory minimum sentences from a 100:1 to an 18:1 'crack-to-powder' ratio." *United States v. Lasley*, Nos. 08-20082, 09-3336, 2011 WL 3611393, at *2 (D. Kan. Aug. 16, 2011). "The United States Sentencing Commission promulgated Amendment 750 to effectuate the FSA." *United States v. Wilson*, No. 12-1033, 2012 WL 3217606, at *2, n.7 (10th Cir. Aug. 9, 2012) (citing *United States v. Osborn*, 679 F.3d

1193, 1194 (10th Cir. 2012)). Amendment 750, which went into effect on November 1, 2011, adjusted the drug-quantity tables in the Guidelines, "increasing the required quantity to be subject to each base offense level in a manner proportionate to the statutory change to the mandatory minimums effectuated by the FSA." *Osborn*, 679 F.3d at 1194 (internal quotation omitted). Amendment 759 made Amendment 750 retroactive. *Id*.

However, if a defendant is sentenced pursuant to a statutory minimum sentence rather than a Guideline range, a reduction under 18 U.S.C. § 3582(c)(2) is not authorized. *Wilson*, 2012 WL 3217606, at *2, n.7; U.S.S.G. § 1B1.10, cmt. n.1. In addition, the policy statements make clear that an amendment must have the effect of lowering a defendant's applicable guideline range for a retroactive sentence reduction to apply. *Jones*, 2012 WL 1536199, at *1.

Here, defendant received a sentence of 210 months. The only mandatory minimum involved was for Count 1, at a term of no less than ten years, or 120 months. Defendant was sentenced at a total offense level of 37 and a criminal history category of I, resulting in a guideline range of 210 to 262 months. As a result, it appears defendant was sentenced pursuant to a guideline range, and not a statutory minimum sentence. Thus, Amendment 750 could potentially alter defendant's sentence if the drug quantity table effected a change in defendant's applicable guideline range.

The estimated quantity of cocaine base upon which defendant was sentenced was 1,496.68 grams, or 1.49 kilograms. Defendant was sentenced under the November 1, 2008 Edition of the U.S.S.G. Manual. Defendant was accountable for the distribution of at least 500 grams of cocaine base, but less than 1.5 kilograms, which corresponded to an offense level of 34 using the Drug Quantity Table in U.S.S.G. § 2D1.1(c)(3). An additional level was added to account for the distribution of the cocaine base in proximity to an elementary school, bringing defendant's base

-11-

offense level to 35.  A two-level increase was added for the presence of firearms.  These calculations led to defendant's total offense level calculation of 37.

Applying the November 1, 2012 Edition of the U.S.S.G. Manual, however, does not change defendant's guideline calculation.  Although the quantities subject to each base offense level have changed, defendant's quantity of 1.49 kilograms still corresponds to an offense level of 34, which has a range of at least 840 grams but less than 2.8 KG of cocaine base.  With the three additional levels mentioned above, defendant's offense level calculation is still 37.  Thus, Amendment 750 does not entitle defendant to a reduction of sentence under 18 U.S.C. § 3582(c)(2).

Defendant's one-page motion argues that he is entitled to a two-level reduction, putting him at total offense level of 35 and a criminal history category of I, resulting in a range of 168 to 210 months.  Defendant's motion does not explain why defendant believes his total offense level should be 35.  Construing defendant's motion liberally, the court assumes that defendant is invoking Amendment 706, which he does cite in his reply.

Amendment 706 was promulgated by the United States Sentencing Commission on November 1, 2007.  Amendment 706 revised the § 2D1.1(c) Drug Quantity Table and, as a result, the guideline ranges applicable to crack cocaine offenses.  *See* U.S.S.G. app. C sup., amend. 706; U.S.S.G. § 2D1.1(c) (Supp. May 31, 2008).  As is noted above, defendant was sentenced under the November 1, 2008 Edition of the U.S.S.G. Manual.  This manual had already incorporated the changes to the drug quantity table under Amendment 706.  Because Amendment 706 does not lower the applicable guideline range, a sentence reduction under 18 U.S.C. § 3582(c)(2) is not authorized.  *See* 18 U.S.C. § 3582(c)(2) (providing that a court may only modify a sentence "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)").  Here, defendant's sentence

was not "subsequently lowered" by Amendment 706—the changes under Amendment 706 were already in place at the time defendant was sentenced.

Accordingly, neither Amendment 750 nor Amendment 706 changes defendant's guideline calculation. Defendant's motion is denied.

## Evidentiary Hearing

The record before the court conclusively shows that defendant is not entitled to relief. Therefore, no evidentiary hearing is required. *See United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988) (holding that no hearing is required where factual matters raised by a § 2255 petition may be resolved on the record).

## Certification of Appealability

The court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under this standard, a defendant must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation omitted). The court is not convinced that its conclusions are debatable among reasonable jurists or that the issues presented merit further proceedings. For the reasons stated above, the court finds that defendant has not made a substantial showing of the denial of a constitutional right. The court declines to issue a certificate of appealability in accordance with Rule 11 as amended December 1, 2009.

**IT IS THEREFORE ORDERED** that defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 547) is denied.

**IT IS FURTHER ORDERED** that defendant's Motion for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offenses Under 18 U.S.C. § 3582 (Doc. 557) is denied.

**IT IS FURTHER ORDERED** that the court will not issue a certificate of appealability.

Dated this 12th day of March, 2013, at Kansas City, Kansas.

s/ Carlos Murguia<br>
**CARLOS MURGUIA**<br>
**United States District Judge**